LYDIA M. SCOFIELD *vs.* GEORGE LOCKWOOD.

35 425
64 397

The declaration of an auctioneer at a sale of real estate, that the land extended to a certain line on the south side, held not to be evidence in favor of the purchaser against the adjoining owner on the south, in a controversy as to the line.

A new trial will not be granted where evidence improperly admitted can not have affected the result.

Where land is so described in a deed that it can be ascertained, it will pass by the deed, although some particulars of the description may be false.

Where a deed bounded certain land on the south by a line " commencing at the highway on the west, on the north fence of a lane"—and there was no fence on the north line of the lane for several rods from the highway, but a fence about four rods further north, and an unenclosed space between it and the lane, it was held that the north *fence* of the lane might be considered as meaning the north *line* of the lane, or as a false description that did no harm.

EJECTMENT ; tried in the Superior Court, on the general issue closed to the court, before *Sanford J.* Judgment for the defendant, and motion for a new trial by the plaintiff.

The general principles involved in the case will be sufficiently understood from the opinion, without a statement of the facts, which are complicated and could not be understood without a map of the premises.

*Curtis*, in support of the motion.

*Child*, contra.

HINMAN, C. J. The question in this case is, whether the demanded premises passed to the defendant by his deed from Wells R. Rich, administrator of Nelson Scofield, dated the 9th day of July, 1857. That deed purported to convey forty-five acres of land, more or less, and bounds it on the south by land of Peter Scofield and the estate of Ezekiel Scofield, and the only other important boundary, so far as this case is concerned, the westerly, is not given, but the deed refers for a more particular description to a deed from Charles Brown, administrator of Ezekiel Scofield, to the aforesaid Nelson Scofield, of the date of May 6, 1854, and in this deed the boundaries of the land are thus described in part:—"West by land of said estate and highway; the south line commences at the highway on the west, on the north fence of the lane, immediately north of the dwelling house, and follows the north fence of said lane easwardly, and the north fence of a second lane to the eastern termination of said second lane, thence southwardly following the stone fence at the end of said lane to the southern boundary of the homestead of said Ezekiel." From the plan of the premises annexed to the motion it appears that the land in controversey is in form nearly a square of not far from four rods on each of its sides, jutting into the southwest corner of the forty-five acre tract and bounded on the west by the highway mentioned in the deed from Brown to Nelson Scofield, and on the south by the lane mentioned in that deed, if indeed it was not itself a part of the lane; and on the east and north partly by a fence and partly by an old building which stood in its northeast corner.

We think it quite clear that the premises in question were

never a part of what in the deed of Charles Brown is called the lane and the north fence of which is mentioned as the southern boundary of the land conveyed by it. First, the northeast corner of the disputed land was covered by the old building, so that practically it could not have been a part of the lane; and as there was a fence running from the highway to the northwest corner of this building, and another from its southeast corner to the point where the north fence of the lane commenced, and there was nothing but the old building itself to connect these two pieces of fence, the call in the deed for the north fence of the lane as the boundary on the south from the highway cannot be answered, unless this old building is treated and considered as *itself* constituting such fence, and if so the deed does not state on which side of this building was the true line, nor is there anything to show whether it was included or excluded from the conveyance. But the southern boundary is fully given in the deed before any mention is made of this north fence of the lane. The whole tract is bounded south by land of Peter Scofield and land of the estate of Ezekiel Scofield, and then in order to point out the particular line between the estate of Ezekiel and the land conveyed it is mentioned that the south line commences " at the highway on the west on the north fence of the lane." But this fence is not given as the whole of the southern boundary. Had it been so the boundary would obviously have been imperfect, not only in respect to the part next to the highway, but in respect to the portion between the two sections of the lane, the precise line at which place can only be arrived at by inferring that it was intended it should be in a direct line from the east end of the north fence of the first lane to the west end of the north fence of the second lane. The disputed premises are an uninclosed area between the farm lane running past the northerly side of Mr. Ezekiel Scofield's dwelling house and the old building before mentioned, and between that building and the highway passing by on the west. Such an uninclosed area, as we all know, is not uncommon around or by the side of our old farm houses, sometimes used as places for depositing wood

and timber or farming implements, and sometimes as an open lawn.

With this knowledge of the *locus* it is apparent that it is impossible to answer all the calls of the deed from Charles Brown except upon the hypothesis of the plaintiff, which excludes the disputed territory from the conveyance and with it the old building standing upon it, with the land covered by it. But if we do this we not only exclude the old building in the corner of this uninclosed area, but are compelled to consider the north side of it as the fence on the north side of the lane. This we think is not only a forced construction but is contrary to the contemporaneous construction of the parties, since it appears that Nelson Scofield the grantee of Brown took possession of this building immediately after his deed and occupied it as his own, and actually bargained with one of the heirs of Ezekiel Scofield for the sale of it, and after the bargain was given up took down the building without objection from any one ; and if we include this old building in the purchase of Nelson Scofield, as from this evidence it would seem that we must, and exclude the rest of this open area, we make the line from the highway such a zig zag as it would seem the parties never could have intended, besides denying to the grantee access to this building in the usual mode across this open space. The deed calls for two things in respect to the southerly boundary of the land intended to be conveyed, a lane to the highway and a fence on the northerly side of this lane ; and if we exclude the disputed premises as any part of the lane, as we think we must, then while there is a lane running to the highway, yet for a short distance of some four rods just contiguous to the highway the lane has no fence. But if we reject the fence as a false description and consider the north line of the lane as the real boundary, (and we have no doubt it was the boundary actually intended and that the word "fence" was used merely as meaning the north line of the lane,) we have a precise and definite boundary for the whole south line of the land commencing at the highway and running by the lane as far as it goes, and the description of the bounda-

ry is perfectly certain. We are of opinion under the circumstances that this ought to be done, and that the maxim *falsa demonstratio non nocet* properly applies to the case ; the rule being that where any property is sufficiently ascertained by the description it will pass by the instrument intended to convey it, although all the particulars stated in the instrument may not be true in respect to it. *Dunning* v. *Cranstoun,* 7 Mees. & Wels., 10.

With this view of the construction of the deed from Charles Brown, administrator of Ezekiel Scofield, to Nelson Scofield, the question as to the admissibility of the declarations of the auctioneer, Holley, employed by the defendant's grantor to sell the estate of Nelson Scofield some years after the conveyance of Brown, becomes unimportant ; since by Brown's conveyance to Nelson Scofield, Scofield obtained a perfect title to the land in controversy, and his administrator therefore had the right to sell it, and his deed to the defendant vested the title in him, and he does not need any aid from these declarations to establish his defense. The court therefore will not grant a new trial of the case, which if granted must come to the same result as the former trial, though there was error in admitting these declarations. It ought not however to be inferred that we consider those declarations admissible in the unqualified manner in which they were received by the court. They are claimed to be admissible under the idea that there was a latent ambiguity in the deed of Charles Brown. But upon the construction which we give to that deed in the light of the facts and circumstances, which are always admissible for the purpose of determining the subject of the grant and the quantity of interest intended to be given by it, and in order to identify the property intended to be conveyed by the grantor, we are of opinion that there is no ambiguity in the deed, and therefore the foundation of the defendant's argument fails. But the case does not present a latent ambiguity in any event. Had the open piece of ground north of the dwelling house and west of the old building spoken of been in fact a part of the lane mentioned in the deed, then the line would have

commenced at the fence by the highway north of this open ground, and the declaration of the defendant's grantor that he claimed the land for some rods south of this fence, and his assuming to sell it through his auctioneer, could have had no effect upon the title. All that could be claimed from the act of selling the land would be that he at that time exercised an act of ownership as the representative of Nelson Scofield, like the act of selling the old building and afterwards taking it down by Mr. Scofield in his life time, and if like that act of Mr. Scofield it had been acquiesed in by the heirs of Ezekiel Scofield, it might have been some evidence of the contemporaneous construction of the deed of Charles Brown by the parties in interest. But we understand that this evidence was intended and received as something more than this, and if so we think it clearly inadmissible; though, for the reasons already stated, we do not advise a new trial on that account.

In this opinion the other judges concurred.